UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| SYED M. J. HASAN, | ) | NO. CV-08-0294-LRS |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANTS' |
| -vs- | ) | SUMMARY JUDGMENT MOTION |
| | ) | |
| EASTERN WASHINGTON STATE | ) | |
| UNIVERSITY; JOHN MASON; DOLORES | ) | |
| DEE MARTIN; SANDRA CHRISTENSEN, | ) | |
| and HARM-JAN STEENHUIS, in their | ) | |
| representative and individual | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

BEFORE THE COURT is Defendants' Motion For Summary Judgment, Ct. Rec. 56, and Plaintiff's Motion for Partial Summary Judgment and Issue Preclusion, Ct. Rec. 52, both filed on September 20, 2010. A telephonic oral argument was held on November 23, 2010 and the Court took the matter under advisement on that date.

**I.  BRIEF BACKGROUND**

Plaintiff seeks compensation under 42 U.S.C. § 1983 for alleged lost wages and emotional distress. (Complaint p. 17). Plaintiff asserts violation of his constitutional rights on the premise that 1) he was

ORDER - 1

deprived of property rights; 2) his contractual rights were impaired; 3) he was deprived equal benefits because of his race pursuant to 42 U.S.C. § 1981; and 4) he was deprived of the freedom from retaliation.

Plaintiff is a long-term employee at Eastern Washington University ("EWU") who complains about academic decisions that have been made over his 40 year career.

Despite EWU following the written standards, Hasan submits that he should be given more deference based upon his seniority. However, numerous administrators, union representatives, and arbitrators have reviewed the academic decisions in dispute in this case, and they have unanimously agreed that Hasan's assignments were consistent with his collective bargaining agreement ("CBA").

Plaintiff Hasan has sued EWU four times during his employment. DSMF[1] ¶ 11. Plaintiff previously sued EWU in state court in 1980. DSMF ¶ 12. The 1980 lawsuit challenged EWU's denial of his promotion based upon lacking his doctorate. Id. The decision to not recommend Hasan for promotion because he did not have his doctorate was unanimous. DSMF ¶ 13, 16,17. Hasan was not aware of any motive to deny him the promotion other than the fact that his numeric score was lower for promotional purposes because he did not have his doctorate. DSMF ¶ 13,16,17. However, Hasan sued claiming the decision was based upon discrimination and retaliation. DSMF ¶ 12. Despite not meeting the requirements for the promotion, Hasan was promoted to full professor

_____

[1]Defendants' Statement of Material Facts, Ct. Rec. 58.

ORDER - 2

in an effort to settle the lawsuit. DSMF ¶ 16,18.

In 1984, Hasan again accused EWU's president, Dr. Frederickson, of retaliation and discrimination with regard to not granting Hasan a merit increase. DSMF ¶19. Dr. Frederickson was found by the Court of Appeals Division III to be acting with reasonable judgment and within his authority in denying Hasan a merit increase.  DSMF ¶ 19.  The Court of Appeals stated " . . . the president made a reasoned decision that was neither arbitrary nor capricious and was not contrary to law."  Ct. Rec. 72-1, Exh. 30.

In 1998, Plaintiff disputed, through arbitration, his removal from the graduate qualified faculty list. DSMF ¶ 20-21. Everyone who reviewed the decision found that Hasan's removal from the graduate faculty list was necessitated by his failing to maintain a terminal Ph.D. degree or sufficient scholarly productivity in the form of intellectual products available for public scrutiny. DSMF ¶ 20-27. Although Hasan did not meet the requirements, he claimed that he was removed from the MBA list because of his race. DSMF  ¶21.  This issue was resolved by arbitration on March 9, 1999 with a finding that "The evidence is clear and convincing the grievant [Mr. Hasan] failed to sustain his scholarly productivity, and therefore he did not qualify to be on the list based upon the objective criteria." DSMF ¶ 26. Plaintiff unsuccessfully attempted to raise this dispute again in his state court lawsuit filed in 2001. DSMF ¶ 45-51.

In 2001, Plaintiff filed a lawsuit in Spokane County Superior Court asserting discrimination and retaliation. DSMF ¶ 45-51. In the

ORDER - 3

2001 lawsuit, Plaintiff named Defendant Christensen (also named herein) as the chair of the department from 1998-2002, and Dr. Cameron (not named herein), the prior College Dean. DSMF ¶45. Plaintiff's 2001 state court lawsuit proceeded to trial after summary judgment rulings on April 7, 2003, and it was voluntarily dismissed by Plaintiff at that time.  DSMF ¶ 50-51.  The claims in the 2001 lawsuit similarly attacked all administrators with EWU who made decisions regarding his schedule and qualifications that were influenced by his lack of professional productivity. DSMF ¶ 45-51. The state court entered an order and judgment finding that Plaintiff's claims of discrimination and retaliation against Dean Cameron and Defendant Christensen were frivolous, meritless, and violated CR 11.  DSMF ¶ 51.

Throughout his 40 plus-year history at EWU, Plaintiff has also pursued a number of Union grievances, some of which have proceeded to arbitration and/or mediation.[2]  All of the decisions regarding Plaintiff's work load were subject to review by a chain of administrators, and his own Union officials, in addition to independent arbitrators. DSMF ¶ 78-79, 113-114, 177, 180, 194-197. All reviewers agreed that Plaintiff did not meet the necessary requirements of his job to get the reduction of his teaching time below 36 credit hours. Id.  An arbitrator found that Hasan violated

---

[2]The collective bargaining agreement provides a grievance procedure and further provides that "[t]his procedure shall be the exclusive means of resolving grievances." CBA ¶7.1, DSMF ¶ 53. The agreement further allows for binding arbitration of any disputes consistent with the Labor Arbitration Rules of AAA. CBA ¶7.7.2, Id.

ORDER - 4

the terms of the CBA and that he had no right to refuse to teach the 36 credit hours, including the assigned course, Management 296. DSMF ¶ 193. Hasan was found to be insubordinate, and the arbitrator determined the appropriate discipline to be imposed. DSMF ¶196, 197.

Defendants assert that there is no evidence in this case that any administrator or EWU employee took any adverse employment action that was motivated by either retaliation or discrimination.  The decisions at issue all relate to applying written policies, contract terms and the Association to Advance Collegiate Schools of Business ("AACSB") accreditation standards to an employee who was performing below the requisite level.

Defendants maintain the majority of allegations asserted by Hasan are barred by the applicable statute of limitations, the doctrines of res judicata and collateral estoppel and the Eleventh Amendment. Defendants seek summary judgment dismissal of all of Hasan's claims of deprivation of property and/or contractual interference in violation of 42 U.S.C. § 1981 and § 1983. Defendants assert Plaintiff fails to prove a prima facie case of any unconstitutional violation, an actual deprivation of a property right within the applicable statute of limitations, or any individual defendant who acted with any deliberate intent to deprive him of a constitutional right.

**II.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). The party seeking summary judgment may show that no genuine issue of material fact exists by either: (1) pointing out to the Court there is an absence of evidence to support the nonmoving party.s case; or (2) setting forth its version of the facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-26, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party opposing summary judgment must then go beyond mere pleadings to designate specific facts establishing a genuine issue for trial. *Celotex*, 477 U.S. at 323-24, 106 S. Ct. at 2533; *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994); *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III. DEFENDANTS' SUMMARY JUDGMENT MOTION - ANALYSIS

Plaintiff asserts that he was damaged by adverse employment actions occurring between 2006 and 2008. (Complaint, Ct. Rec. 1). Defendants argue that all of the alleged actions asserted by Hasan relate to requirements placed upon all faculty who are not publishing.

ORDER - 6

DSMF ¶ 52-199.  Hasan is the only faculty member in his department who has not published anything in his field in 17 years. DSMF ¶ 69, 90. Hasan claims that it is unfair that faculty who are publishing or performing administrative duties teach less to allow time to work on their other work assignments. DSMF ¶ 103-105.  Hasan feels that as a senior faculty member, he should be allowed to teach less even though he is not publishing. Id.  Defendants advise that seniority is not a factor considered by contract with regard to faculty work load assignments. DSMF ¶ 104-105, 109. Defendants conclude that Plaintiff Hasan fails to identify any facts that any faculty member, who is similarly situated (not publishing anything in 17 years), was (or has been), treated differently. DSMF ¶ 72, 103,108.

   A.    Eleventh Amendment Immunity Applies to EWU and the
         Defendants Acting in Their Official Capacity.

   Plaintiff has brought claims against EWU and various individuals, the latter in their individual and representative capacities. Plaintiff Hasan claims that EWU and the State are liable for deprivation of property without due process under 42 U.S.C. § 1983, and for impairment of contract under 42 U.S.C. § 1981.  Defendants argue that the Eleventh Amendment bars suits in federal court by citizens of a state against their own state or a state agency or department.  Defendants point out that there is an exception to the Eleventh Amendment immunity for Title VII claims.  Plaintiff, however, clarifies, in his response to Defendants' Motion for Summary Judgment, that he has not brought a Title VII violation claim in this suit.

ORDER - 7

In general, the Eleventh Amendment bars a federal court from hearing claims by a citizen against dependent instrumentalities of the state. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The immunity of the states from suit in the federal courts, as guaranteed by the Eleventh Amendment, is not overridden by 42 U.S.C.A. § 1983 or §1981. *Quern v. Jordan*, 440 U.S. 332, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979; *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). This immunity extends also to agents or "arms" of the state for the purpose of § 1983 actions. State agencies or government entities which have been found to partake of the state's Eleventh Amendment immunity from § 1983 actions include state universities. *Ndefru v. Kansas State University*, 814 F. Supp. 54 (D. Kan. 1993).

Moreover, a suit against a state official sued in his official capacity is in reality a suit against the state, and therefore a state official sued in his official capacity enjoys Eleventh Amendment immunity against suit. *Gangloff v. Poccia*, 888 F. Supp. 1549 (M.D. Fla. 1995).

Plaintiff identifies EWU as a State agency in his Complaint ¶¶ 1.2, 1.3. The Certificate of Insurance, the EWU Policy on it's organization, and the RCW's confirm that EWU is a state agency. (Ct. Rec. 96, ¶ 221). Plaintiff also concedes the Eleventh Amendment immunity applies if EWU is a State agency and that the suit against

ORDER – 8

EWU and each defendant in their representative capacity would violate the eleventh Amendment under Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir.1982). (Ct. Rec. 89 at 14).

Therefore, the Court finds the claims against EWU and each defendant in their "representative capacity" would violate the Eleventh Amendment" and must be dismissed.

B.   Remaining Issues

After all memoranda were filed by all parties, Defendants identify (4) issues that remain for the Court to decide: 1) whether the alleged conduct is within the statute of limitations; 2) whether the alleged conduct states a violation of 42 U.S.C. §1983 for deprivation of property without due process or a violation of 42 U.S.C. §1981 for retaliation based upon some speech protected by the First Amendment; 3) whether the individual Defendants are entitled to qualified immunity; and 4) the extent to which res judicata applies to prior court and arbitration proceedings.[3]  Plaintiff did not dispute this list of remaining issues at oral argument.  The Court will visit each issue that is the subject of Defendants' summary judgment motion.

---

[3]Defendants point out that Plaintiff improperly attempts to add claims to his complaint at the summary judgment stage.  Specifically, Plaintiff attempts to insert the following claims through his opposition to Defendants' summary judgment motion: a 4th Amendment Search and Seizure claim, a violation of privacy claim, and a hostile work environment claim.  Ct. Rec. 95 at 13.  The Court agrees that these new claims or theories of liability were not pled.  Accordingly, they are not properly before the court.  Moreover, there is insufficient evidence in the record to raise a genuine issue of material fact on any of those claims if they had been pleaded and formally added to the plaintiff's complaint.

ORDER - 9

1        1.   Statute of Limitations

2       Civil rights claims under 42 U.S.C. § 1983 are governed by

3   Washington state's three-year statute of limitations for personal

4   injury actions. *Bagley v. Lumpkin*, 798 F.2d 1297 (9th Cir. 1986); RCW

5   4.16.080.   The statute of limitations is subject to a 60-day tolling

6   provision based upon Washington's statute governing claims against the

7   state, therefore, the applicable statute of limitations in this case

8   is July 26, 2005.[4]  Plaintiff must identify conduct by the individually

9   named Defendants that deprived him of a property right after July 26,

10  2005, to support his § 1983 claim.   All alleged adverse employment

11  actions occurring outside of that time period must be dismissed.

12      As to Defendant Martin, in her individual capacity, Plaintiff

13  fails to identify any action by Defendant Martin allegedly depriving

14  Plaintiff of a property right within the statute of limitations.

15  Defendant Martin was the dean of the department until the spring of

16  2006.   Defendant Martin disciplined Plaintiff in March 2004 relating

17  to Plaintiff's inappropriate behavior with a student. DSMF ¶ 213-214.

18      The other conduct identified as the <u>focus</u> of Plaintiff's

19  litigation, as stated in Plaintiff's memoranda in opposition to

20  Defendants' motion for summary judgment (Ct. Rec. 89, at 1-2),

21  consists of two disciplinary suspensions for insubordination, one of

22  which occurred within the statute of limitations period.   Plaintiff

23  has also now conceded that the requirement of teaching 36 credits

24

25

26

         [4]Three years plus 60 days is July 26, 2005.

ORDER - 10

is/was the correct assignment despite his prior objections.  Id. at 3.
The Court, however, will discuss below the remaining conduct which is
the subject of Plaintiff's complaint.

A.   Two disciplinary Suspensions

a.   2007 Suspension for Insubordination

Plaintiff complains that his  personal preference not to teach
Management 296 was not followed. (Complaint ¶ 4.36). Defendants assert
that this issue was arbitrated in 2009 with a finding that Hasan's
position was not reasonable and his refusal to teach the course was
insubordination. (DSMF ¶ 186-199). Defendants explain that Provost
Mason was charged with making the discretionary disciplinary decision
and termination for even one incident of insubordination has been used
in other cases. Provost Mason stayed the imposition of any discipline,
however, pending resolution by the arbitrator. (DSMF ¶196). Defendants
further argue that Plaintiff does not identify any evidence of
discriminatory animus by Dr. Mason, and in fact, Plaintiff admits Dr.
Mason treated him in a manner which was fair. (Ct. Rec. 95, at 7).

Defendants also point out that the arbitrator found that Provost
Mason was acting in good faith. (DSMF ¶ 193). It is undisputed that
Plaintiff was advised in writing several times that he would be
considered insubordinate and subject to discipline if he did not show
up and teach MGMT 296. (SMF ¶ 222-223).  There is no evidence that
discipline was taken against Hasan for anything other than his
intentional misconduct in refusing to comply with the terms of his
contract. Id.

ORDER - 11

The Court finds that Plaintiff's claim for retaliation based on this alleged adverse treatment is unavailing.  Plaintiff has not identified any adverse treatment that is based on a retaliatory motive.  By all accounts, Dean Fuller and Provost Mason were acting in good faith and there is simply no evidence that discipline was taken against Plaintiff for anything other than his intentional misconduct in refusing to comply with the terms of his contract, which refusal was found to be insubordination by the arbitrator. (DSMF ¶ 198).

b.    2004 Suspension Re: Reported Misconduct in 2003

In 2003, Hasan reportedly violated ethical policies based upon his treatment of a work-study student and the misuse of University resources. (DSMF ¶ 213-214).  The Court finds that this issue was not pled in Plaintiff's Complaint, and more importantly, the conduct complained of falls outside of the statute of limitations.  Plaintiff attempts to assert that since there are several discrete acts, a continuous violation theory can be applied.  Plaintiff's theory is akin to an unending statute of limitations for events dating over the past 40 years.  The Court disagrees.

Adverse employment actions, such as discipline, suspensions or other adverse employment decisions made on a specified date, are discrete.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002).  *Morgan* made it clear that each retaliatory adverse employment decision is a separate discrete act that constitutes a separate actionable unlawful

ORDER - 12

employment practice. *Morgan*, 536 U.S. at 114.  A plaintiff can only file a charge to cover discrete acts that "occurred" within the appropriate statute of limitation period. *Id*. at 114. Therefore, reliance on the continuous violation theory is inappropriate with respect to discrete employment actions.  The 2004 suspension does not fall within the applicable statute of limitations and will not be considered.

    B.   Objection to Timing/Location of Courses

    Plaintiff has not identified any issue(s) with the timing and location of his courses within the statute of limitations in his Complaint.  Plaintiff's assertions that his schedule was unreasonable (other than the assignment of 36 credit hours, including MGMT 296 in 2007) all occurred between 1998 and 2002, when Defendant Christensen was Chair. (Ct. Rec. 89, at 9-10).  Plaintiff asserts "[t]he issue is whether it is retaliatory for administrators to use their scheduling authority to inflict distress and punishment (by scheduling multiple campuses, morning afternoon and evening assignments, last minute cancellations, etc.)" (Ct. Rec. 89, at 10).

    The alleged disputes relating to the timing and location of scheduling all predated the 2003 litigation and were addressed by the state trial court and prior settlement agreements. (DSMF ¶ 34-37, 47-51). There was no merit to these claims against Dr. Christensen. In fact, in 2009, the arbitrator noted that all of Hasan's objections to the timing of teaching courses were met by EWU, in that the courses

were scheduled on two days back-to-back consistent with Hasan's request. (DSMF ¶193, Arbitration decision p. 11 of 24, FN 15).  The arbitrator found that changes were made by Chair Steenhuis to Hasan's schedule to make Hasan's teaching schedule "more convenient" and consistent with Hasan's request to only teach two days a week. (DSMF ¶193, Arbitration decision p. 6, p. 11 FN 15).

This Court finds Plaintiff has not identified any issue(s) with merit regarding the timing and location of his courses that fall within the relevant statute of limitations for this lawsuit.

C.   Plaintiff's Publication Record

Plaintiff Hasan contends in his opposition declaration that Dr. Fuller did not count papers presented at conferences. (Ct. Rec. 86, at 4, ¶ 6-8).  Defendants assert that this statement is misleading and incorrect in that it attempts to infer that papers presented at conferences[5] are journal publications counted under AACSB standards. Defendants explain that Plaintiff is responsible for entering his publication information into the EWU computer system to accurately portray his record at EWU. (Ct. Rec. 96, ¶216-218).

The court finds Plaintiff's contentions regarding his publications record without merit.  Plaintiff provided sworn discovery

---

[5] Papers presented at conferences are not considered peer-reviewed publications, and the conference papers, referred to as "Referreed Proceedings" are considered a lower quality work, and they would not alter Mr. Hasan's accreditation rating. (Ct. Rec. 96, ¶216-218.) The 2009 arbitration decision noted that academic qualifications depend most heavily on the number of peer-reviewed academic journal publications. (Id. at ¶218).

responses affirming that he has not had any journal publications since 1992, nor are any journal publications identified in his CV. (DSMF ¶ 120; Ct. Rec. 96, ¶ 216). Plaintiff has also admitted in the 2009 arbitration that he has not had any qualifying publications since 1993. (Ct. Rec. 96, ¶ 218).

D.    Individual Claims Against Defendant Christensen

Plaintiff complains generally about scheduling without identifying any specific scheduling dispute issues with Defendant Christensen that fall within the statute of limitations. Defendant Christensen stepped down as Chair in 2002. (DSMF ¶ 45-51, 208-212). Plaintiff previously sued Defendant Christensen, individually, and his claims were found to be frivolous, without merit, and brought for an improper purpose. (Ct. Rec. 88, Finer Declaration, Ex. 7, p. 9 of 144, ¶ 3, 4, 5, 6; DSMF ¶ 210-212).

Defendants argue that Plaintiff's allegations that Defendant Christensen made a disparaging comment[6] about her ex-husband who was Iranian was not indicative of any racial bias.  The State trial court judge granted Defendant Christensen's motion in limine finding the alleged comment inadmissible in 2003. (Ct. Rec. 96, ¶ 210).

The Court finds that Plaintiff's allegations concerning Defendant Christensen are also without merit.  Plaintiff does not identify any

_____

[6]Plaintiff previously alleged that in 1993 or 1994 at a Christmas party, that Defendant Christensen made a comment in relation to her Iranian ex-husband being tricky or sneaky. (Clemmons Supp. Decl., Ex. 55 transcript from Powell's office of Motions in Limine; Powell dep. p. 32, attached as Ex. 56 to the Clemmons Suppl. Decl.). Defendants argue the comment was not racial in nature.

ORDER - 15

scheduling issues with Defendant Christensen nor does he contest that Defendant Christensen has not had any involvement with him since the 2003 dismissal other than being one member of a committee that unanimously suggested Hasan make normal changes to his Faculty Activity Plans ("FAP"). (Ct. Rec. 96, ¶ 210).

> 2.    Violation of 42 U.S.C. §1983

To maintain an action under 42 U.S.C. § 1983 against the individual defendants, Plaintiff must show: (1) that the conduct complained of was committed by a person acting under the color of state law; and (2) that this conduct deprived them of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13, 68 L.Ed.2d 420 (1981); *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  Plaintiff pleaded that he was deprived of a property right without due process in support of his §1983 claim.  To be successful, Plaintiff must prove an actual connection or link between the actions of the named defendants and an alleged constitutional deprivation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Defendants argue that there is no deprivation of any right that can be attributed to any of the individual defendants.  Defendants note that Plaintiff concedes that not liking his accreditation rating, course schedule, or suggested changes to his FAP does not constitute a deprivation of any property right. (Ct. Rec. 89, at 10).  Defendants

assert that they are not liable for the decisions made by the independent arbitrators that determined the discipline imposed upon Plaintiff and that fall within the statute of limitations.

The Court agrees with Defendants. Plaintiff had numerous grievance hearings and arbitration hearings and had union processes available to resolve all of his employment disputes. In light of the litigation record, Defendants have provided this Court with substantial evidence to explain EWU's conduct complained of here. Plaintiff's arguments consist of conclusory allegations and speculation that the alleged conduct was "retaliatory" in a generic fashion. The Court concludes that no genuine issue of material fact exists and Plaintiff's claim that he was deprived of a property right without due process in violation of 42 U.S.C. §1983 is unsupported. This claim must be dismissed as a matter of law.

3.    Violation of 42 U.S.C. §1981

Although not entirely clear, it appears Plaintiff claims that retaliation is based upon his First Amendment right to protected speech, not Title VII. (Ct. Rec. 89, at 15). The First Amendment shields a public employee if he or she speaks as a citizen on a matter of public concern. U.S.C.A. Const.Amend. 1.

Defendants argue that Plaintiff's speech does not qualify as speech on a matter of public concern under the First Amendment. Defendants add that the public concern inquiry is a question of law. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir.2009). Defendants assert

that Hasan's personal disputes over his course schedules and his lack

of qualifications are not matters of public concern covered by the

First Amendment.  Defendants conclude that even if First Amendment

protections did apply, Plaintiff's claim for retaliation would still

fail under the First Amendment five-part test.[7]

Defendants further argue that under the First Amendment, once the

employer identifies a legitimate reason for the employment action, the

Plaintiff has the burden to produce evidence that is "specific and

substantial" to defeat the employer's legitimate proffered reason. *See*

*EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir.2009); *see Cornwell*,

439 F.3d at 1029; *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th

Cir. 1988). Defendants state that Plaintiff fails to produce any

specific or substantial evidence to defeat the legitimate reasons for

the challenged employment decisions.

The Court finds that Plaintiff's speech at issue in this case

does not qualify as speech on a matter of public concern under the

First Amendment.  The First Amendment speech at issue deals with

Plaintiff's seeking redress in the courts and other venues for

---

[7]A five-part test is applied to determine whether an employer impermissibly retaliated against an employee for protected speech: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 748, (9th Cir. 2010).

personnel disputes with EWU.  Speech that deals with individual

personnel disputes and grievances is not of public concern.

    "Speech involves a matter of public concern when it fairly can be

said to relate to any matter of political, social, or other concern to

the community." *Huppert v. City of Pittsburg*, 574 F.3d 696, 703 (9th

Cir.2009). Matters of personal interest are not "public concern."

*Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th

Cir.2009). "[S]peech that deals with individual personnel disputes and

grievances and that would be of no relevance to the public's

evaluation of the performance of governmental agencies is generally

not of public concern." *Eng*, 552 F.3d at 1070 (*quoting Coszalter v.

City of Salem*, 320 F.3d 968, 973 (9th Cir.2003).)

    In a 42 U.S.C. §1981[8] action, Plaintiff must show intentional

discrimination on account of race.  *Lowe v. City of Monrovia*, 775 F.2d

998, 1010 (9th Cir.1986), *as amended*, 784 F.2d 1407 (9th Cir.1986);

*see also General Bldg. Contractor Ass'n v. Pennsylvania*, 458 U.S. 375,

387-91, 102 S.Ct. 3141, 3148-50, 73 L.Ed.2d 835 (1982). Section 1981

prohibits private racial discrimination against white persons as well

as against nonwhites. *See McDonald v. Santa Fe Trail Transportation*

---

    [8]42 U.S.C. s 1981. Equal rights under the law:"All persons within
the jurisdiction of the United States shall have the same right in every
State and Territory to make and enforce contracts, to sue, be parties,
give evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by
white citizens, and shall be subject to like punishment, pains,
penalties, taxes, licenses, and exactions of every kind, and to no other.
(R.S. s 1977.)"

ORDER - 19

*Co.*, 427 U.S. 273, 296, 96 S.Ct. 2574, 2586, 49 L.Ed.2d 493 (1976).

To recover for retaliation against the exercise of protected speech, a plaintiff must show that his or her speech was a "substantial' or "motivating" factor in the defendant's allegedly retaliatory conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Thus, to survive summary judgment, Plaintiff must raise a genuine issue of improper motive. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The Court finds that Plaintiff has wholly failed to raise a genuine issue of improper motive.

The only discussion that relates to motive is the excerpt from the Cavanaugh Arbitration (2009) that the arbitrator concluded: "... at the very least, [Hasan] had reason to be suspicious of the motives of some of his colleagues who were involved in governing his relationship with the Department, a suspicion that was exacerbated by communications from the Administration that were not as clear, judged in retrospect, as they might have been". (Ct. Rec. 53-1, Ex. 5 at 22). The Court finds that this statement of the Arbitrator, however, falls short of actual evidence of improper motive--rather it appears to be a commentary on the Administration's communications that, in hindsight, could have been clearer.

Plaintiff fails to produce any specific or substantial evidence to defeat the legitimate reasons for the challenged employment decisions. To be successful in the §1981 claim, Plaintiff must prove:

ORDER - 20

1) the conduct occurred within the statute of limitations; 2) there was an objective adverse employment action, not just a proclaimed subjective one; and 3) plaintiff must submit evidence of the causal connection between the protected activity and the employment action.

In this case, all faculty were subject to AACSB standards, the terms of the College Plan, and the terms of the CBA. Plaintiff's having to comply with those written requirements, like all faculty, is not an adverse employment action. All employees across the nation are subject to the accreditation standards that require scholarly work in the form of peer-reviewed journal publications to maintain qualifications. It is undisputed that Plaintiff did not maintain the necessary publications to be either academically or professionally qualified. It is also undisputed that all faculty members FAP's were initially rejected and suggested changes were recommended. All other faculty made the suggested changes. Plaintiff Hasan was the only faculty member who refused, and therefore, the policy was followed to adopt an acceptable FAP. The only link or motive for the employment decisions made were Plaintiff's failure to comply with written requirements.

The Court finds Plaintiff's §1981 claim, while not clearly articulated, fails to show any intentional discrimination on account of race or ethnicity. Plaintiff's work ethic and desire to comply with faculty performance standards, instead, appears to have been a decisive factor in the employment decisions complained of here. This claim must be dismissed.

ORDER - 21

4.   Qualified Immunity

Qualified immunity shields them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  If a public official could reasonably have believed that his actions were legal in light of clearly established law and the information he possessed at the time, then his conduct falls within the protective sanctuary of qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

Government officials are protected by qualified immunity unless they violate clearly established law of which a reasonable person would have known. *Id*. The qualified immunity standard is a generous one. It "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Id. at 229 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Based on the Eleventh Amendment immunity found above, the claims are dismissed against the individuals in their representative capacities.  Therefore, the Court will not analyze qualified immunity defense as part of this order.

5.   Res Judicata

The parties differ on their respective views as to the extent to which res judicata applies to prior court and arbitration proceedings. Defendants urge that most of Plaintiff's claims are barred by res

ORDER - 22

judicata and/or collateral estoppel.  Defendants argue where a claim or issue has been or could have been litigated in a previous lawsuit or action, the claim is barred from re-litigation by the doctrines of collateral estoppel and res judicata. *Latman v. Burdette*, 366 F.3d 774, 783 (9th Cir. 2004).

Additionally, Defendants assert, res judicata applies to grievance hearings and arbitration decisions.  *Mulugeta v. Regents of University of San Francisco*, 80 Fed.Appx. 574 (9th Cir. 2003); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320-21 (9th Cir. 1992).  A prime objective of an agreement to arbitrate is to achieve "streamlined proceedings and expeditious results." *Preston v. Ferrer*, 552 U.S. 346, 357, 128 S.Ct. 978, 169 L. Ed. 2d 917 (2008) *(quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

Defendants conclude that all of Plaintiff's scheduling concerns, course assignments, and alleged violations of the CBA are subject to the mandatory arbitration provisions. He was unsuccessful in his grievances and his arbitrations. He cannot attempt to re-litigate the issue of whether any violation of the CBA occurred. It has already been found that Plaintiff had no right to refuse to teach Management 296, and that it was appropriate under the CBA to assign him 36 credit hours. (DSMF ¶ 197).  Pursuant to the doctrines of res judicata and collateral estoppel, Defendants request that Plaintiff's claims, relating to all matters that previously could have been asserted in

his prior lawsuit or that were arbitrated or subject to the mandatory arbitration provision, must be dismissed as a matter of law. (Ct. Rec. 59, at 13-15).

Plaintiff, in opposition, argues that he did not litigate his state case to a conclusion. On the eve of trial, on the advice of his counsel, he withdrew his claims without prejudice. (Ct. Rec. 89, at 13). Plaintiff states that no merits were reached and the dismissal was without prejudice. Id.

The Court finds, as above, that Plaintiff must prove an intentional and knowing violation of his civil rights by the individual Defendants within the statute of limitations to state a cause of action. This Court has considered all alleged conduct within the applicable statute of limitations. The Court agrees with Defendants that the law is clear that res judicata applies to grievance hearings and arbitration decisions.

**IV.  CONCLUSION**

The Court concludes the doctrines of res judicata, collateral estoppel and the statute of limitations require dismissal of the majority of Plaintiff's claims. Plaintiff's retaliation claims are dismissed based on the undisputed, legitimate reasons for the employment action(s). Plaintiff was not treated any differently than any other faculty, all of whom did comply with the standard written requirements that apply to all faculty. In this case, there is no adverse employment action affecting his pay or the terms of his

employment.  Legitimate reasons exist for all of the alleged acts falling within the statute of limitations, and there is no evidence of any pretext for a discriminatory or retaliatory motive by any of the Defendants.  All of Plaintiff's claims are dismissed as a matter of law as against all Defendants named herein.

**IT IS ORDERED:**

1.  Defendants' Motion for Summary Judgment, **Ct. Rec. 56**, is **GRANTED.**  All claims against all defendants are dismissed with prejudice.

2. Plaintiff's Motion for Partial Summary Judgment and Issue Preclusion, **Ct. Rec. 52**, is **DENIED as MOOT**, in light of the ruling above.

The District Court Executive is directed to file this Order, provide copies to counsel, and enter judgment consistent with this order, and close the file.

**DATED** this 14th  day of December, 2010.

*s/Lonny R. Suko*

LONNY R. SUKO
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 25